STATE ex rel. BAKER, Appellant v. JAMESON, Respondent

(38 N. W.2d 441.)

(File No. 9063.   Opinion filed July 19, 1949)

**T. R. Johnson** and **Edwin C. Parliman,** Sioux Falls, for Appellant.

**Sigurd Anderson,** Atty. Gen., **William J. Flittie,** Asst. Atty. Gen., for Respondent.

SMITH, P.J.   This appeal, in a habeas corpus proceeding from an order of the circuit court remanding appellant to the custody of the warden of the penitentiary of South Dakota, presents the question whether the trial of appellant on a charge of manslaughter in the first degree was so infected with unfairness as to impel a holding that the judgment of conviction upon a plea of guilty is void under the due process provisions of the Fourteenth Amendment of the Constitution of the United States, and § 2, Article VI of the Constitution of South Dakota.

Prior to the 31st day of August 1943, one William Sturges, an incompetent cousin of appellant, had been placed in the custody of appellant.   On that day Sturges died at appellant's ranch home.   The body bore evidence of extreme violence.   There were multiple cuts through to the scalp. There were also healed scalp scars.   There was hemorrhage of both eyes, and crusted wounds of the forehead and face. Certain teeth were knocked out and others were hanging loose.   There were multiple lacerations, crusted wounds and contusions over the body, arms and hands.

On September 1st, 1943, appellant was arrested and charged with the murder of Sturges.   The record of the committing magistrate shows that appellant was brought before the court on that day; that the complaint was read to him; that he was fully advised of his constitutional rights; and that September 6th, 1943, at ten o'clock A. M. was fixed as the time for holding a preliminary hearing.   The transcript of the reporter of the proceedings had on September 6th, 1943, records the appearance of the appellant in person

and by his attorney, C. E. Kell. At that time the state filed and there was read to the defendant an amended complaint charging the appellant with the crime of manslaughter in the first degree. Thereupon, in the presence of appellant and his attorney, the state's attorney said, "At this time, the defendant having signified his desire to plead guilty to the charge of manslaughter in the first degree, the state states that his plea of first degree manslaughter will be accepted, and the plea of guilty under this information will be considered as a plea of guilty of manslaughter in the first degree." Neither Mr. Kell nor Baker questioned the truth of this representation by the state's attorney. Thereafter the defendant waived preliminary examination and was bound over to circuit court on both charges.

The foregoing proceedings were had at White River, in Mellette County. On the following day the sheriff transported appellant a distance of approximately one hundred miles to Bonesteel for arraignment before the circuit court. At the arraignment appellant appeared without counsel. However, on that occasion in moving the dismissal of the charge of murder, and making the arraignment on the charge of manslaughter in the first degree the state's attorney, in the presence of the appellant, said, "I might say to the record that Mr. Baker was represented at the preliminary examination by Mr. C. E. Kell, and that the negotiations concerning the dropping of the murder charge and the filing of the first degree manslaughter charge were all conducted through Mr. Kell and the defendant himself." This statement of the state's attorney was not challenged by appellant.

After ascertaining that applicant understood not only the meaning of the charge, but that it was a felony involving imprisonment in the penitentiary, the court informed appellant that he was entitled to be represented by counsel. Although defendant was able to provide himself with counsel, when informed that the expense of counsel would be upon him, he advised the court that he didn't believe he wanted an attorney. Thereupon, without any further explanation of the rights of a defendant so charged, the court accepted

appellant's plea of guilty, and sentenced him to twenty years in the penitentiary.

The record of the interrogation by the court after receiving appellant's plea includes the following questions and answers:

"Q. How did this happen that caused this fight or whatever it was that caused the death of this man? A. Well, those cuts and places on his head, I didn't know they were on there.

"Q. Well, there was some fight or something there, wasn't there? A. No, we didn't have no fight.

"Q. Did you beat him up? A. Not with no clubs or anything like that.

"Q. With your fists? A. No.

"Q. Didn't hit him at all? A. I slapped him a few times at different times, a little.

"Q. What did you do that for? A. Oh, just little arguments.

"Q. How old was he? A. Around thirty-nine, I believe.

"Q. Was he any relation to you? A. Cousin.

"Q. Was he living with you? A. Yes sir.

\*        \*        \*        \*        \*        \*

"Q. What time of day did this happen? A. When he passed away, you mean?

"Q. When you slapped him. A. Well, that had been quite a while before his death, I would say a month or so.

"Q. And there was no more trouble up till the time of his death? A. No.

"Q. Did you ever kick him and beat him more than that once? A. Well, that first time was when we was working on the dam. We had a little dispute.

"Q. What happened there? A. Oh, nothing much, I just booted his pants a little.

\*        \*        \*        \*        \*        \*

"Q. You told about two altercations or fights or whatever there were with him. Weren't there more than that? A. More than two? No."

Thereupon the state's attorney stated, "I want to say to the record that, of course, what this man says now prob-

ability doesn't make a great deal of difference. * * * I want to say to the Court that those who saw this body will agree that they never before saw a human body that was pounded and beaten and in the shape this was in."

Whereupon appellant stated, "He worked every day up till his death." And after further questioning stated, "Well, about a week ago this Monday—no—this is Tuesday, isn't it? About a week ago tomorrow or next day we was stacking hay and the team backed a hay buck over him and throwed him around under it."

The testimony of appellant given at the habeas corpus hearing embraced the following statements of fact. He is a native of this state and was over forty years of age at the time in question. He had quit school when in the eighth grade. He had a wife and two daughters. The family lived upon a farm or ranch he owned, and he operated additional land. His net worth was over $5,000 at the time of his arrest. He denied any connection with the death of the deceased, and expressed the opinion that death resulted from injuries received by deceased when the team backed a hay bucker over him several days before his death. He was arrested on September 1st, 1943. He did not hire Mr. Kell as his lawyer. He talked with him just once on the morning of September 6th, 1943, but he did not relate the substance of his conference with Mr. Kell. He admits Mr. Kell was at the hearing before the committing magistrate on September 6th, 1943. He denied any knowledge of court procedure. He admitted that he was a witness for the state in a criminal case on one occasion and that he knew at the time of his plea that terms of court were held where defendants accused of crimes were tried before juries. He could not remember many of the things the record reveals about his appearance before the committing magistrate and his arraignment.

Among other things the trial court found "that defendant, Baker, while said charges were pending against him, had ample opportunity to, and did, consult freely with his said attorney, C. E. Kell, about the charges against him and his constitutional rights" and that "Contrary to the allega-

tions in defendant's application for a writ of habeas corpus herein, the defendant was not denied the assistance of counsel for his defense, and that defendant knew and was advised of his right to counsel, both in the Justice Court and before the Circuit Court; and that defendant did knowingly and intentionally, and with knowledge of his rights, plead guilty and receive sentence."

The contention here is that due process was not accorded accused because, being without counsel on the arraignment and being unfamiliar with court procedure, and uninformed as to his rights, the court failed to completely instruct and advise him as to his rights in the premises, and hence that his rights were not intelligently and competently waived. Point is made of the fact that the court did not furnish appellant with a copy of the information or advise him that he was entitled to such a copy, and that he did not further advise the accused that he was entitled to a speedy public trial before an impartial jury of Mellette County, to compulsory process for witnesses on his behalf and to be confronted with witnesses against him.

As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial: "the acts complained of must be of such quality as necessarily prevent a fair trial." Lisenba v. California, 314 U. S. 219, 62 S. Ct. 280, 290, 86 L. Ed. 166. The right to defend in a criminal prosecution in person and by counsel is assured by § 7, Art. VI of the constitution, and SDC 34.3506 provides that counsel must be assigned to an indigent accused. We are of the view that neither the described provision of §, 7 Art. VI, nor the due process requirement of § 2, Art. VI of our constitution impose a requirement that every defendant in a criminal case be represented by counsel. Cf. State v. Sweeney, 48 S. D. 248, 203 N. W. 460, and Betts v. Brady, 316 U. S. 455, at page 466, 62 S. Ct. 1252, 86 L. Ed. 1595. It seems settled that the due process provision of the Fourteenth Amendment to the federal Constitution does not embrace an inexorable com-

mand that every accused have the assistance of counsel. Betts v. Brady, supra; Uveges v. Commonwealth of Pennsylvania, 1948, 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 152. There may be a competent and intelligent waiver of the asistance of counsel. Adams v. United States ex rel. McCann, 317 U. S. 269, 63 S. Ct. 236, 87 L. Ed. 268, 143 A. L. R. 435; Bute v. Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986. The absence of counsel, although waived, places added burdens upon the trial court. State ex rel. Henning v. Jameson, 71 S. D. 144, 22 N. W.2d 731 and State v. Haas, 69 S. D. 204, 8 N. W.2d 569. As applied to the use of the phrase "due process of law" in § 2 of Art. VI of the constitution of South Dakota, we subscribe to the view expressed by the Supreme Court in Betts v. Brady, 316 U. S. 455, at page 461, 62 S. Ct. 1252, 1256, 86 L. Ed. 1595. In that case it was written:

"The phrase formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denal. In the application of such a concept there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed."

By a denial of due process in a criminal case a court undermines its jurisdiction. Acker v. Adamson, 67 S. D. 341, 293 N. W. 83; State ex rel. Henning v. Jameson, supra; and State v. Haas, supra.

In the light of these principles we look at the full course of the proceeding which culminated in the challenged judgment of conviction to ascertain whether, when so viewed as a whole, it can reasonably be said that it so offends against the settled notions of fairness and justice of English-speaking people at to fail to amount to due process of law.

In so doing we draw such inferences of fact as we deem to have been available to the trial court.

The trial court was justified in believing that after appellant was arrested on the charge of murder, he was promptly brought before a committing magistrate, where his rights were fairly explained, and a date several days hence, set for a preliminary examination; before that time appellant consulted experienced counsel; the facts and rights afforded appellant under the law were considered by appellant and his counsel; thereafter a bargain was made between appellant and his counsel on the one hand and the state's attorney on the other hand, subject to the approval of the court; that the charge of murder would be dismissed, and a plea of guilty would be made and received to a proposed charge of manslaughter in the first degree; at the time of hearing, the charge of manslaughter was read to appellant and the terms of the agreement above described were explained to the committing magistrate in the presence of appellant; because of the described agreement, and as provided by SDC 34.23, appellant was taken before the judge at Bonesteel on the following day for the purpose of carrying out the terms of that agreement; the presiding judge was apprised of the arrangement which had been made, subject to his approval, and that appellant, while appearing without counsel, was acting on the advice of counsel; the murder charge was thereupon accordingly dismissed; thereafter appellant was arraigned on the charge of manslaughter which in simple terms stated that he had killed deceased by beating, striking and kicking him about the head and body; the court then ascertained that appellant understoon the charge and explained that it was a felony for the commission of which he could be confined in the pententiary; the court further explained appellant's right to be represented there by counsel, which right appellant waived; thereafter the plea of guilty was received and entered.

If the foregoing were all of the circumstances disclosed by the record, we are firm in our conviction that no reasonable ground would appear for contending that the level

of protection afforded the defendant was below that commanded by the cited due process provisions of our federal and state constitutions. However a further fact injects perplexities. In making answer to the inquiries made by the court after the plea had just been received, the appellant made statements which in substance amounted to a denial of the guilt he had just admitted. Nevertheless, the court, without more, imposed a twenty-year sentence. Whether we should stamp this procedure with approval is not the question. The record confronts us with the question whether, in view of this subsequent denial of guilt, due process commanded that the presiding judge afford appellant added protection. It is our conclusion that in the circumstances a negative answer must be made to this question.

To waive the rights with which the law surrounds him and to enter a plea of guilty is the privilege the law affords a competent accused who acts with an understanding of his rights. Adams v. United States ex rel. McCann, 317 U. S. 269, 63 S. Ct. 236, 87 L. Ed. 268, 143 A. L. R. 435. The right to appear by counsel is accorded a defendant but he is not required so to do. The charge was serious but not of a capital offense. The appellant is apparently a person of normal intelligence. That he was charged with causing the death of the deceased by blows and kicks is something he could not have failed to understand. He knew his plea admitted that fact. In pleading guilty he acted on the advice of and pursuant to an agreement made by experienced counsel. Predicated on that agreement the state dismissed the charge of murder. When the proceeding is looked at as a whole, it is clear that we cannot say the trial court was not justified in concluding that the plea of guilty was voluntarily entered by one who was competent to understand, and who did understand the facts and all of his rights in the premises. Due process required no more.

The order of the trial court is affirmed.

RUDOLPH and SICKEL, JJ., concur.

ROBERTS and HAYES, JJ., concur in result.