## IN RE APPLICATION OF KISER

(158 N.W.2d 596)

(File No. 10464. Opinion filed May 1, 1968)

**Davenport, Evans, Hurwitz & Smith, Carleton R. Hoy,** Sioux Falls, for appellant.

**Frank L. Farrar,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent.

WUEST, Circuit Judge.

The Appellant, Melvin F. Kiser, was charged, tried and found guilty of two counts of grand larceny in the Circuit Court of Codington County, South Dakota. Count One of the Information charged him with stealing "One (1) Remington automatic 12-gauge shotgun" from the Gamble Store of Watertown, South Dakota, on November 17, 1965.

Count Two of the Information charged him with stealing "one (1) Remington automatic, 20-gauge, model 1100 shotgun" from Mahowald's Hardware, of Watertown, South Dakota, on November 17, 1965.

Appellant, by stipulation, was tried jointly with one Trice Morrill, who was charged by a like Information and found guilty of both counts. Each was sentenced to the penitentiary. No appeal was taken from this judgment.

Kiser, in custody at the state penitentiary, made an application for a writ of habeas corpus to the Circuit Court of Minnehaha County, South Dakota, which after a hearing on the writ, entered its judgment quashing the same. Kiser appeals from this judgment.

On appeal, he urges three grounds for reversal: (1) Improper arrest; (2) insufficiency of the Information describing the guns alleged to have been stolen; and, (3) conviction by use of evidence obtained by illegal search and seizure.

The record shows Appellant and Trice Morrill entered the Gamble Store at Watertown, South Dakota, on November 17, 1965, between 10:00 and 10:30 a. m. Kiser was carrying a blue overcoat on his arm when he entered the store, which attracted the attention of Karl Bates, serviceman for Gambles, because it was cold outside. Morrill purchased some lamp cord from Harold Schmitz, a clerk employed at the store. In the meantime, Kiser was standing at the end of the counter and according to Bates, "* * * his head was like on a swivel, going back and forth looking at everything." Bates, still suspicious of the pair, went to a balcony in the store where he could observe their actions. He stood behind some venetian blinds where it would be difficult to be seen. Morrill then purchased a "G. I. Joe doll" from Schmitz and as Schmitz and Morrill were walking toward the till, Kiser turned and walked down the south side of the toy racks and as he walked, he hung the blue coat over his shoulder. When he reached the gun rack, according to Bates, "he turned around and bent down and he looked all through these holes that he could see through back towards the till, and then he turned around and with his right hand, reached up and took a gun from the rack and put it underneath his coat and turned and walked out." In the meantime, Morrill had paid for the "G. I. Joe doll" and he and Kiser arrived at the front door at about the same time, leaving the store together. Bates reported the theft

to the clerk, Schmitz, and proceeded to follow Kiser and Morrill. The pair went south and upon observing Bates following them, quickened their gait. They went around a corner and Bates next saw them in a dark Oldsmobile with a black and white license, which was driven out of sight.

Bates gave a description of the automobile to Bob Stohr, Gamble's appliance salesman, who in turn gave the description to the Watertown Police.

Between 10:30 and 11:00 a. m., on November 17, 1965, Armond Vik, Sheriff of Deuel County, South Dakota, received a radio message from the Watertown Police to proceed to the junction of Highways 212 and 77, which is twenty-one miles east of Watertown and commonly referred to as Tunerville Junction. When Vik arrived at the Tunerville Junction, he saw Kiser and Morrill standing beside a 1959 Oldsmobile. At the trial he described the automobile as "* * * dark green, it was a dirty green, it looked almost black, but it was dark green." He further testified the rear license plate was a black and white Indiana plate.

Vik held Appellant and Morrill until other officers arrived. The first officer to arrive was Highway Patrolman Lofswold. Shortly thereafter, Codington County Deputy Sheriff Homer Rawlins, Watertown Police officer Arlo Brenden and Karl Bates arrived. Bates identified the two men as the same persons he saw in the Gamble Store and identified the automobile as the same he saw them in at Watertown. Patrolman Lofswold searched the Oldsmobile, finding two shotguns under a blanket in the back seat, and handed the shotguns to Deputy Rawlins. The two men were instructed to return with the officers to Watertown. Kiser rode with Rawlins and Morrill with Lofswold. Officer Brenden drove the Oldsmobile. When the party arrived at Watertown, the pair were taken to the Sheriff's office where Rawlins advised them they were under arrest "for taking a gun out of Gamble's."

Deputy Rawlins testified that he removed a blue coat from the Oldsmobile "* * * just after we got back to town with the car", which was laying over the front seat of the Oldsmobile.

He further testified that a blanket he observed over the guns in the back seat of the car at Tunerville was removed at the same time.

Officer Brenden testified he drove the Oldsmobile to Watertown. When he got into the Oldsmobile to drive it, he saw a large sack sitting in the front seat, which was partially covered with the blue overcoat. Other evidence established the large sack contained a smaller sack containing a piece of lamp cord. Also found in the larger sack was another small sack containing two small sacks of screws, a sales slip from Gambles, a sack of nails, another piece of lamp cord, a sack of screws and bolts, a sack containing sandpaper and a sales slip from Mahowald's Hardware, which showed a sale of 33 screws, 4 bolts, washers, sandpaper, nuts and electric cord. One of the smaller sacks containing nails had the imprint upon the outside "Our Own Hardware", which was known in Watertown as Mahowald's Hardware. In the rear seat of the Oldsmobile was a "G. I. Joe doll."

Officer Brenden did not examine these articles when he got into the automobile, but did subsequently when they were removed to the Sheriff's office. On cross-examination he said they were on the seat where anyone could see them. The record does not specifically establish the time when the articles were taken to the Sheriff's office. However, Brenden testified he showed the articles to Deputy Sheriff Rawlins who called "Our Own Hardware". Mr. Mahowald, proprietor of "Our Own Hardware", testified he was at the Sheriff's office "* * * between ten and eleven or eleven-thirty", to examine one of the shotguns found in the back seat. It may be reasonably inferred the articles were removed at approximately the same time as the blue overcoat and blanket.

Mr. Archie Patzer, manager of the Gamble Store at Watertown, South Dakota, identified one of the shotguns removed from the back seat of the Oldsmobile at Tunerville Junction as a Remington Model 1100 12-gauge automatic shotgun; that most shotguns have serial numbers and the serial number on this particular shotgun was 201054M. He testified his store maintained

a "Firearms Record" book, which was used in the operation of the store; that when a gun was received by the store, a record was immediately made in this book showing the make of gun, model number, caliber, gauge, serial number, type of action and date received; when a gun is sold, the name and address of the purchaser is listed in the record book. He further testified this particular shotgun was received by the Gamble Store on August 12, 1965, and had never been sold; that he had examined the gun in the Sheriff's office at approximately 12:30 p. m., on November 17, 1965, and identified the same from the corresponding serial number.

James Mahowald testified that he operated the Mahowald Hardware at Watertown, South Dakota; that on November 17, 1965, he saw Kiser and Morrill in his store between 9:15 and 10:00 a. m. One of the parties had a blue overcoat over his arm similar to the one identified as having been removed from the Oldsmobile by Deputy Rawlins. He testified one of the parties purchased some nails and identified one of the nails removed from the Oldsmobile as a type sold in his store. He further identified a sack removed from the Oldsmobile as a type used by his store; lamp cord removed from the Oldsmobile as a type sold in his store; another bag removed as a type used in his hardware store; sandpaper as a type of sandpaper sold in his store; and another bag as a type used in his store. He stated the sales slip contained the name of his hardware store upon it. This sales slip showed wood screws, bolts, washers, sandpaper, nails and electric cord were sold 11-17-65. After laying the proper foundation, these articles were admitted into evidence without objection.

Mahowald further testified that one of the shotguns removed from the Oldsmobile at Tunerville Junction was a Remington Model 1100 gas operated 20-gauge shotgun; that the serial number upon it was 117836X. According to the "Federal Firearms Record" kept by his store, the gun was received at his store for sale on September 13, 1965, and had never been sold. He further said he identified the gun at the Sheriff's office on November 17, 1965, between ten, eleven or eleven-thirty a. m.

The State produced witness Harold Schmitz, the clerk in the Gamble Store and commenced to lay a foundation for the admission into evidence of the "G. I. Joe doll", the Gamble sales slip and certain other articles removed from the large sack in the front seat of the Oldsmobile. Defense counsel interrupted the State and stipulated such exhibits could be received in evidence.

The two guns, the blue overcoat and the blanket were received without objection.

On November 18, 1965, Appellant and Morrill were charged with two counts of grand larceny in Minnehaha County, South Dakota. Count One charged them with stealing a Browning 20-gauge shotgun, serial number 31243V4, from the Ace Hardware of Sioux Falls, South Dakota. Count Two charged them with stealing one Browning 12-gauge shotgun, serial number 79572, from the Ace Hardware of Sioux Falls, South Dakota. It was alleged both guns were stolen on November 16, 1965.

December 1, 1965, both parties were again charged in Minnehaha County, South Dakota, with the offense of grand larceny. They were charged with stealing a .222 caliber Savage Anschutz rifle, serial number 439673, from Olson Marine of Sioux Falls, South Dakota. It was further alleged this gun was stolen on November 16, 1965. Preliminary hearing on these charges was held prior to the trial in Codington County. The parties were represented by the same counsel as at the later trial in Codington County. At the preliminary hearing on the charges brought in Minnehaha County, objection was made to admission of the guns into evidence, claiming an illegal search and seizure. However, the exhibits were received into evidence and Appellant and Morrill remanded to the Circuit Court of Minnehaha County, for trial upon the charges. Prior to trial in Minnehaha County and before the Codington County trial—still represented by the same counsel—Appellant and Morrill made a motion to suppress from evidence the three guns which they were charged with stealing in Minnehaha County. They claimed the three guns were removed from the trunk of their automobile by an illegal search and seizure. An evidentiary hearing was held by the Circuit Court of Minnehaha County on January 19, 1966. The

formal order of the Court was entered suppressing the three guns from evidence on September 6, 1966. The three guns were specifically described in the order of suppression and the Court found,

"That the defendants were apprehended at Tuner-ville, South Dakota at 11:00 a. m. on November 17, 1965, at a road block following the reported theft of two shot-guns from two different stores in Watertown, South Da-kota. That neither of said shotguns is one of the above described. The Watertown shotguns were discovered on the backseat of the defendant's automobile under a blanket, having been found after permission was given at that time to look in the car. At that time no search was made of the trunk, nor was any express permis-sion given to anyone to do so. The defendants were taken into custody and approximately twenty minutes later were returned to Watertown in custody and placed in jail, their automobile being parked on the street out-side the Courthouse. The automobile was not left in charge of anyone and stayed there until 4:45 p. m. with-out being observed or watched by anyone. At 4:45 p. m. the trunk was opened by the officers using a key which had been previously taken from the defendants without first obtaining permission from either of the defendants, and with neither of them present, they having been in jail since they arrived at Watertown some 4 or 5 hours earlier. The search of the trunk took place where the automobile was parked on the street outside the sheriff's office from approximately 12:00 noon to 4:45 p. m. A purported search warrant was secured by the officers and used in making the search, a copy of which was not served upon either of the defendants. At the time of the making of the affidavit and search warrant there was no complaint from anyone nor did the officers have in-formation from anyone that the above described guns involved here had been stolen from anyplace."

■ Prior to commencement of the trial in Codington Coun-ty, defense counsel made a motion to exclude from evidence all

articles and guns taken from the trunk of the Oldsmobile pursuant to the search warrant. By agreement of the States Attorney, no reference of any kind was made regarding the guns and articles taken from the trunk. However, Appellant in his hand printed application for a writ of habeas corpus contends, among other things, that the Minnehaha County order is an adjudication the evidence used in the Codington County trial was obtained by illegal search and seizure. In support of this claim the transcripts and records pertaining to the charges in Minnehaha County were offered into evidence at the hearing on the habeas corpus. These exhibits were received over objection. However, the Court indicated they were possibly immaterial and irrelevant and said he would disregard them if he should later determine them to be inadmissible. Upon examination of the transcripts and records it becomes obvious they have no bearing upon the legality of the evidence used in the Codington County trial. The order of suppression refers specifically to the three guns alleged to have been stolen in Minnehaha County, South Dakota, and this order further discloses the evidence suppressed was taken from the trunk of the automobile some four or five hours after the removal of the evidence used in the Codington County trial. The Minnehaha County proceedings were inadmissible for the purpose for which they were offered and we assume the trial court disregarded the transcripts and records in arriving at its decision in this case as he said he would. Sulzbach, et al v. Town of Jefferson, et al., 83 S.D. 156, 155 N.W.2d 921; Murdo Independent School Dist. No. 32 v. Litzenberg, 58 S.D. 162, 235 N.W. 606; In re Hoisington's Estate, 67 S.D. 280, 291 N.W. 921.

In support of his claim of illegal arrest, the Appellant cites SDC 1960 Supp. 34.1609, requiring an officer making an arrest without a warrant to inform the person being arrested of the officer's authority and the cause of arrest.

An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer. SDC 1960 Supp. 34.1603. A peace officer may, without a warrant, arrest a person: "(2) When the person arrested has com-

mitted a felony, although not in his presence; (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it;". SDC 1960 Supp. 34.1609. No claim has been asserted that Vik, or the other officer who arrived shortly thereafter, did not have reasonable cause to arrest Appellant for the offense. According to Appellant's own testimony at the habeas corpus hearing, the following transpired relative to the actions of Sheriff Vik:

"Q. Did he tell you at any time that you were under arrest? A. Yes, sir. Well—if I may, sir—

"Q. Go ahead. A. (Continuing) He didn't say I was under arrest. He said he was holding me until the Codington County officials came."

Appellant further testified regarding his conversations with Vik and he testified, among other things, that he told Vik:

"A. * * * 'if you're not going to tell me what this is, and I'm not under arrest, then I'm going.' So I started to leave, and he put his hand on my shoulder or arm, and he said that a reported theft had been supplied to him, that a theft had occurred in a Gamble Store in Watertown, and that he was holding me until the Watertown police came, which they were on their way."

He further testified that Sheriff Vik placed him in Vik's car and three, four or five minutes later a highway patrolman came by and in another ten minutes the party from Watertown arrived and according to appellant,

"A. Well, they got out, and they came over, and the Deputy Sheriff from Codington County asked Mr. Bates if he could identify me, and Mr. Bates said, 'Yes, he was in the store.' He showed me—he identified himself—he showed me his badge, and said, 'I'm from Codington County.'

"Q. Who was this? A. Mr. Homer Rawlins.

"Q. The Deputy Sheriff? A. Yes. * * *."

██ SDC 1960 Supp. 34.1609, requiring an officer making an arrest without a warrant to inform the person being arrested the officer's authority and the cause of arrest, provides no particular ritual to be followed. The rule is satisfied if what is said and done makes clear why the arrest is being made. United States v. Robinson, 2 Cir., 325 F.2d 391. Also see State v. Phillips, 262 Wis. 303, 55 N.W.2d 384. As a general rule, the notice is sufficient when it is such as to inform a reasonable man of the authority and purpose of the one making the arrest, and the reason thereof. Circumstances, without express words, may afford sufficient notice. 6 C.J.S. Arrest § 6c. We hold the circumstances, as revealed by Appellant's own testimony, satisfy the requirement of the statute and a lawful arrest was effected.

The Appellant and Morrill were taken from Tunerville in Deuel County to Watertown in Codington County. They were not taken before a magistrate in Deuel County for setting of bail as required by SDC 1960 Supp. 34.16A03, The Uniform Law on Intrastate Fresh Pursuit.

██ ██ The failure of the officers to take Appellant before a magistrate in Deuel County is a nonconstitutional and nonjurisdictional defect, Application of Dutro, 83 S.D. 168, 156 N.W.2d 771, which cannot be reviewed by collateral attack on the judgment, since post-conviction habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N.W.2d 712.

██ Petitioner claims the evidence removed from his automobile and introduced in the Codington County trial was the result of an illegal search and seizure. We have concluded he was lawfully arrested at Tunerville. A search of the automobile was made at the place and time of arrest. The two shotguns were found on the back seat under the blanket and removed. This was a legal search and seizure incidental to legal arrest.

State v. Mehlhaff, 72 S.D. 17, 29 N.W.2d 78; State v. McCreary, 81 S.D. 212, 142 N.W.2d 240. The blue overcoat and the blanket were in plain view of the officers at Tunerville and plainly in the view of officer Brenden when he drove the Oldsmobile to Watertown. They were removed when the automobile was returned to Watertown. It may be inferred the other articles were removed at the same time. The officers in this case had a right to search this automobile as an incident to the arrest, and remove it to Watertown, where it could have been used as evidence. State v. McCreary, supra.

The blue overcoat, blanket, "G. I. Joe doll", and other articles admitted in evidence, being in the plain view of the officers, were subject to seizure and admissible. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.

Appellant claims the Information is defective because it does not describe the guns by serial number and as a result there is no certainty the accused would not be placed in double jeopardy.

An information is sufficient if it states the elements of the offense with sufficient particularity to apprise the defendant of the crime charged and to enable him to prepare his defense and to be protected in the event of double jeopardy. State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455; State v. Wood, 77 S.D. 120, 86 N.W.2d 530; State v. Lange, 82 S.D. 666, 152 N.W.2d 635.

Any words of description which make clear to the common understanding the property in respect of which the offense is charged are sufficient, especially where the description of the property is not an essential element of the offense, except to show that it was the subject matter of the offense charged. 27 Am.Jur., Indictments and Informations, § 83. If a second prosecution is instituted, double jeopardy may be established by reference to other parts of the record in the first trial, or by evidence showing that the defendant has been previously tried for the same offense. Roberson v. United States, 5 Cir., 237 F.2d 536; Browder v. United States, 5 Cir., 292 F.2d 44, cert. denied, 368 U.S. 930, 82 S.Ct. 366, 7 L.Ed.2d 193; State v. Hicklin, 358 Mo. 1016, 218 S.W.2d 564.

 We believe the guns were sufficiently described in the Information.

Affirmed.

All the Judges concur.

WUEST, Circuit Judge, sitting for RENTTO, J., disqualified.