STATE of South Dakota, Plaintiff
and Appellee,

v.

Patrick J. CONATY, Defendant
and Appellant.

No. 14817.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1985.

Decided Jan. 22, 1986.

Grant Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., on brief.

Ron J. Volesky of Churchill, Manolis, Freeman & Volesky, Huron, for defendant and appellant.

HERTZ, Acting Justice.

This is a criminal appeal from a jury verdict which convicted the appellant of possession of a firearm by one convicted of a prior violent crime, reckless discharge of a firearm, and for being an habitual offender based upon five prior felony convictions. We affirm.

The appellant herein, Patrick J. Conaty, (Conaty), was visited by Michael Woodhouse, (Woodhouse), on two separate occasions during the course of the evening and early morning hours of September 29 and 30, 1984. At the time, Conaty resided with his fiancee, Darlene Swimmer, (Swimmer), at the Fair City Apartments in Huron, Beadle County, South Dakota. Woodhouse was the State's principal witness in the subsequent action from which this appeal is taken.

At the time of the incident, Woodhouse was homeless and living in his car. He testified that he had previously left some personal property for safekeeping in Conaty's apartment. Woodhouse further testified that at approximately midnight or 12:30 a.m. on the night in question, he visited Conaty's home to pick up a bible. Thereafter, an argument ensued between Woodhouse and Conaty. According to Woodhouse, Conaty kicked him out of the apartment and also threatened him with a

broken wine bottle as he attempted to leave the building.

Swimmer testified that Woodhouse never mentioned picking up a bible when he entered their apartment. Rather she testified that Woodhouse was in a very agitated state and was pacing around the room. Swimmer further stated that Woodhouse was hollering at Conaty, threatening his life, and that he had a pint of wine with him. Moreover, Swimmer believed that Woodhouse had stolen a hunting knife from them. She communicated this belief to Conaty after Woodhouse left the apartment.

On cross-examination by defense counsel, Woodhouse admitted that he had been drinking wine and beer that evening. However, he denied threatening Conaty and stealing the hunting knife.

After Woodhouse left for the first time, Conaty went downstairs to Howard Bacon's (Bacon), apartment. At trial, Bacon testified for the prosecution. He stated that Conaty arrived at his apartment at about 12:45 a.m. and asked if he could bring Swimmer downstairs. Bacon testified that he believed Conaty was afraid for his life because Woodhouse had been upstairs pounding on doors and threatening to kill people.

Conaty telephoned the police from Bacon's apartment and he was present when the police arrived. Bacon testified that Conaty told the officer that if Woodhouse returned, Conaty would "get rid of him" any way that he could. Following the policeman's departure, Conaty asked Bacon if he could borrow a shotgun. Bacon agreed, and stated at trial that he gave Conaty the gun because he thought Woodhouse was going to kill Conaty. Bacon further testified that he believed Conaty was only going to use the gun to scare Woodhouse off in the event that he returned to the apartment building. The shotgun was loaded with shells provided by Bacon.

At approximately 1:00 a.m., Woodhouse returned, and later testified that he looked up and saw Conaty pointing a shotgun at him. Conaty ordered him to leave, and Woodhouse refused. Moments later, Conaty discharged the shotgun. Woodhouse testified that Conaty lowered the shotgun prior to firing the gun, and that the shotgun blast hit the floor about three feet to Woodhouse's side. Pellets from the shotgun blast were subsequently found lodged in the top half of the screen in the front door of the apartment building.

Defense witness William Young, (Young), also resided at the Fair City Apartments at the time of this occurrence. At trial, Young corroborated the testimony of both Swimmer and Bacon pursuant to Woodhouse's threats against Conaty.

On November 20, 1984, Conaty entered a plea of guilty to Part II of the information which alleged him to have been convicted of four prior felonies. On that same day, Conaty was sentenced to fifteen years in the South Dakota State Penitentiary on Count I, possession of a firearm by one convicted of a prior violent crime in accordance with SDCL 22–14–15. On November 21, 1984, Conaty was sentenced to a one year term to run concurrently in the Regional Correctional Center on Count II, reckless discharge of a firearm in compliance with SDCL 22–14–7.

Conaty presently appeals from that portion of the judgment which found him guilty of reckless discharge of a firearm based on the allegation that there was insufficient evidence to sustain the verdict. Secondly, Conaty challenges the State's ability to amend Part II of the information at the time of trial.

Under SDCL 22–14–7, the State must prove that at the time and place of the incident, the accused recklessly discharged a firearm. Consonent with SDCL 22–1–2(1)(d), a person is reckless with respect to circumstances when he consciously and unjustifiably disregards a substantial risk that such circumstances exist.

Our standard for determining the sufficiency of evidence to sustain a verdict is:

> Whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty

beyond a reasonable doubt. In making this determination, this court will accept that evidence and the most favorable inferences that can fairly be drawn therefrom which will support the verdict. (citation omitted.)

*State v. Lien,* 305 N.W.2d 388, 389 (S.D. 1981).

■ Here, there was testimony to the effect that Woodhouse was armed with a knife, however, neither Conaty nor any of the witnesses saw him so armed. Moreover, there was testimony that Conaty had been drinking on the evening in question. Given Bacon's statement that Conaty intended only to scare Woodhouse with the shotgun, we inquire as to why Conaty insisted upon loading it. Inasmuch as shotgun pellets were subsequently found in the front door screen, it is not illogical under the circumstances to conclude that had someone been entering the Fair City Apartment building at the time Conaty discharged the shotgun, that they would have been hit by the residual blast.

The testimony at trial established that Conaty prepared himself for Woodhouse's return by borrowing a gun, loading it, and then waiting for Woodhouse to reappear. In light of the foregoing facts as pertinent to a charge under SDCL 22-14-7, we find that Conaty consciously disregarded the substantial risk that his conduct could harm Woodhouse or some other person, when he deliberately discharged the shotgun in the public hallway of the Fair City Apartment building. We hold, therefore, that the trial court did not err in finding that the evidence and reasonable inferences drawn therefrom, were sufficient to find Conaty guilty of reckless discharge of a firearm.

■ Given the foregoing ruling, we need not reach Conaty's claim of self-defense. We note that this issue was not properly preserved for appeal, however, this omission is of little consequence. The disposition of Conaty's self-defense argument was a question of fact for the jury. As such, the jury heard the testimony and evaluated the witnesses. Evidently they found the defense witnesses unpersuasive. Thus, we find that Conaty's self-defense claim does not rise to the level of plain error.

Conaty next argues that because Part II of the information specifically classified his offense as violative of SDCL 22-7-7 and not SDCL 22-7-8, the trial court erred by sentencing him under SDCL 22-7-8 which resulted in a substantially stiffer penalty.

In Part II of the information which was filed the day before the appellant's arraignment, the Deputy State's Attorney informed the court that Conaty was an habitual offender under SDCL 22-7-7. This statute provides, among other things, that "[w]hen a defendant has been convicted of one or two prior felonies ... in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing [it] to the next class which is more severe[.]" The State further alleged that Conaty had previously been convicted of five felonies which were enumerated in the information.

At the arraignment, the trial court delineated Conaty's five prior felony convictions as alleged by the State. Thereafter, the record reveals that the trial judge took painstaking efforts to inform Conaty that should he be convicted upon Count I, then the effect of the habitual information would be to increase the penalty from a Class VI felony to a penalty of up to life imprisonment. Conaty stated that he understood this.

Prior to trial, the State moved to amend Part II of the habitual information to include SDCL 22-7-8, which provides that "[w]hen a defendant has been convicted of at least three prior [felony] convictions in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a Class I felony." Defense counsel resisted this motion on the ground that it was untimely made. As such, he relied on SDCL 22-7-11 which provides in pertinent part, that "[a]n allegation that a defendant is an habitual criminal must be filed as a separate information at the time of, or before, his arraignment.

The information must state the times, places and specific crimes alleged to be prior convictions and must be signed by the prosecutor[.]" The trial court allowed the State to amend the information as requested.

We find that the State satisfied the requirements set forth in SDCL 22–7–11 as evidenced by Part II of the information which was filed before Conaty was arraigned. Furthermore, the information was signed by the prosecutor and it also stated with particularity the times, places, and specific crimes upon which the appellant received prior convictions. Pursuant to Conaty's claim that the trial court erred in sentencing him under SDCL 22–7–8, we hold that our opinion in *State v. Williamson*, 342 N.W.2d 15 (S.D.1983), is dispositive of this issue.

In *Williamson, supra,* a jury convicted the defendant of passing no account checks and also for being an habitual offender. The information charged Williamson with violating SDCL 22–7–7. However, the trial judge sentenced him under SDCL 22–7–8. In affirming the decision, we held that if the information complies with SDCL 22–7–11 and the defendant is aware of the maximum penalty, then the defendant may be sentenced under SDCL 22–7–8, notwithstanding his charge of violating SDCL 22–7–7.

As we wrote in *Williamson, supra,* there is no requirement under SDCL 22–7–11 that an habitual offender information must cite the exact statute which the accused is alleged to have violated. Consequently, the State's failure herein to cite SDCL 22–7–8 is not fatal to the information because that is not a requirement of the statute. Furthermore, the information explicitly lists five convictions which is clearly in excess of the one or two prior convictions as required by SDCL 22–7–7. This fact should have put Conaty on notice that the State intended to proceed under SDCL 22–7–8, (three or more prior felony convictions), rather than the two prior felony convictions rule codified in SDCL 22–7–7. Further evidence that Conaty was aware of the maximum possible punishment in lieu of an express reference to SDCL 22–7–8, is indicated by the trial court's advisement to Conaty that he could conceivably receive a sentence of up to life imprisonment under the habitual criminal information. The record shows that the trial judge informed Conaty of this fact at his arraignment.

Application of the *Williamson* ruling, therefore, convinces us that the appellant was properly sentenced under SDCL 22–7–8. Inasmuch as the habitual information complied with SDCL 22–7–11, and given the fact that Conaty was unquestionably advised that he faced the possibility of a life sentence, we affirm the trial court's sentencing under SDCL 22–7–8, and therefore, find no error.

We accordingly affirm the trial court.

MORGAN, HENDERSON and WUEST, JJ., concur.

FOSHEIM, C.J., disqualified.