Patrick J. CONATY, Applicant
and Appellant,

v.

Herman SOLEM, Warden of the South Dakota State Penitentiary, Respondent and Appellee.

No. 15824.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1988.

Decided April 13, 1988.

Thomas K. Wilka, Rita D. Haverly, Hagen & Wilka, P.C., Sioux Falls, for applicant and appellant.

Mark Smith, Asst. Atty. Gen., Pierre, for respondent and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice.

Defendant, Patrick Conaty, appeals the trial court's denial of his request for habeas corpus. We reverse.

The facts in this case are set out in *State v. Conaty*, 380 N.W.2d 656 (S.D.1986).[1] Briefly, the evidence shows one Woodhouse and Conaty had an altercation in Conaty's apartment. Woodhouse threatened to kill Conaty and other tenants. Conaty called the police and upon the arrival of Officer VanDeWalle, he told the officer that Woodhouse had threatened him and that he would shoot Woodhouse if he returned. After the officer left, Conaty borrowed a shotgun and shells from another tenant, and when Woodhouse returned, Conaty ordered him to leave the building. Woodhouse refused and Conaty shot three feet to the side of Woodhouse. Woodhouse and his companion then left the building, and Conaty reported the incident to the police. One of the witnesses testified that Conaty was "scared and shaken up, like he feared for his life." Conaty was worried about his girlfriend and afraid Woodhouse might kill her.

Conaty was convicted and sentenced to fifteen years in the South Dakota State Penitentiary for possession of a firearm by one convicted of a prior violent crime. SDCL 22–14–15. He was also convicted and sentenced to a one-year term for reckless discharge of a firearm. SDCL 22–14–7. Conaty appealed his conviction on the latter charge, and this court affirmed. This court stated:

> The disposition of Conaty's self-defense argument was a question of fact for the jury. As such, the jury heard the testimony and evaluated the witnesses. Evidently they found the defense witnesses unpersuasive. Thus, we find that Conaty's self-defense claim does not rise to the level of plain error.

*Conaty*, 380 N.W.2d at 658.

The trial court denied Conaty's request for a writ of habeas corpus. This court issued a certificate of probable cause.

Conaty principally claims he was denied effective assistance of counsel because his lawyer failed to request a self-defense jury instruction.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Our function is not to second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney. *Woods v. Solem*, 405 N.W.2d 59 (S.D.1987).

■ "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. However, the reasonableness of counsel's conduct is not the only matter that must be considered. In order to succeed on an ineffective assistance of counsel claim, the defendant must satisfy a two-fold test.

> First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Luna v. Solem*, 411 N.W.2d 656 (S.D.1987); *Woods*, 405 N.W.2d at 61, *quoting Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. "An error by counsel, even if professionally unreasonable, does not warrant setting

---

1. Present counsel was not trial counsel.

aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696.

It is not enough for the defendant to show that the errors had *some conceivable effect* on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. On the other hand, we believe that a defendant need not show that counsel's deficient conduct *more likely than not* altered the outcome in the case. This outcome-determinative standard has several strengths. It defines the relevant inquiry in a way familiar to courts, though the inquiry, as is inevitable, is anything but precise. The standard also reflects the profound importance of finality in criminal proceedings. Moreover, it compacts with the widely used standard for assessing motions for new trial based on newly discovered evidence. Nevertheless, the standard is not quite appropriate.

*Strickland*, 466 U.S. at 693–694, 104 S.Ct. at 2067–2068, 80 L.Ed.2d at 697. (Citations omitted) (Emphasis supplied).

[T]he appropriate test for determining prejudice in this situation is rooted in the test for materiality of exculpatory information not disclosed to the defense by the prosecution and in the test for the materiality of exculpatory information made unavailable to the defense by Government deportation of a witness. The defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

This court has adopted the middle *"reasonable probability"* standard. *Luna, supra; Woods, supra.* The burden of proving prejudice rests upon the defendant.

*Luna, supra; Woods, supra; Lee v. Solem,* 405 N.W.2d 56 (S.D.1987).

■ Simply because a defendant is not permitted to be in possession of a firearm does not mean he is necessarily guilty of violating a statute prohibiting possession of a firearm if he should come into control of the firearm for purposes of self-defense. *United States v. Panter,* 688 F.2d 268 (5th Cir.1982). This is especially true if the statute does not expressly demonstrate a legislative attempt to supersede the self-defense statutes by precluding such a person from claiming self-defense. *State v. Crawford,* 308 Md. 683, 521 A.2d 1193 (1987). Under the appropriate factual setting, this defense is available. *See State v. Nolan,* 700 F.2d 479 (9th Cir.1983), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *United States v. Gant,* 691 F.2d 1159 (5th Cir.1982).

Our Legislature has recognized self defense as a legitimate defense in a general context. SDCL 22–5–9 provides:

Any person may lawfully resist the commission of any public offense as follows:

(1) A person about to be injured may make sufficient resistance to prevent an offense against his person or his family or any member thereof, or to prevent an illegal attempt by force to take or injure property in his lawful possession; and,

(2) A person may make sufficient resistance in aid or defense of a person about to be injured to prevent such offense.

*See also,* SDCL 22–18–4. Article VI, § 24 of the South Dakota Constitution also provides: "The right of the citizens to bear arms in defense of themselves and the State shall not be denied." There are no specific exclusions in either SDCL 22–5–9 or Article VI § 24 of the State Constitution.

In its memorandum opinion on the request for habeas corpus relief, which was incorporated into the findings and conclusions, the trial court noted that defense counsel was fully aware of the potential availability of self-defense in this case. At

the time of settlement of instructions, defense counsel stated:

> For purposes of the record, I would like to say that I, personally, felt at one time that an instruction in self-defense might have been appropriate. I have changed my mind on that, and I would not propose such an instruction.

The trial court concluded that defense counsel had probably chosen his trial tactics and that they should not be questioned. The trial court stated:

> Emphasizing a defense of "self-defense" could have seriously damaged the image of the defendant in the eyes of the jury.... It is reasonable to conclude that the jury would have taken the "self-defense" theory as a joke and then would not have given any consideration to any other argument of the defendant's counsel, however plausible.

The trial court went on to find that "an instruction on the defense of 'self-defense' could not have been supported by the evidence at trial."

In *People v. Jaffe*, 145 Ill.App.3d 840, 97 Ill.Dec. 793, 493 N.E.2d 600 (1986), the court recognized that although there must be a certain showing in order to *prevail* on a defense of self-defense, "[e]ven a slight amount of evidence is sufficient to raise the issue of self-defense and will justify giving an instruction on self-defense to the jury." *Jaffe*, 97 Ill.Dec. at 802, 493 N.E.2d at 609. We agree. Whether an instruction is justified in a given case should not depend on whether there are indications that the defense will probably ultimately prevail.

The facts in this case raise the issue of self-defense, and therefore, defense counsel should have proposed an instruction. Nevertheless, the issue is whether failure to do so was prejudicial.

Under the circumstances of this case, we believe the failure to request a self-defense instruction constituted ineffective assistance of counsel. First of all, the facts in the record do not indicate counsel's failure to offer an instruction can be fairly explained on the basis of trial strategy. There does not appear to be any evidence

that Conaty was the aggressor or any other evidence that, tactically, would make the issue of self-defense more prejudicial to Conaty than it would be helpful. In any case, the critical issue here is whether there is a reasonable probability that the results of the proceeding would have been different. We believe the defendant has shown enough evidence for us to find a *reasonable probability* that the jury would have returned a different verdict had it been given an appropriate instruction on self-defense.

In a criminal prosecution, compliance with the mandate of the Sixth Amendment is an essential jurisdictional prerequisite. The denial of this right to an accused renders a judgment of conviction void, and the accused, if imprisoned thereunder, may obtain his release by habeas corpus. 39 Am. Jur.2d, Habeas Corpus § 53 (1968).

Habeas relief is granted.

All the Justices concur.