**David WAFF, Petitioner and Appellant,**

v.

**Herman SOLEM, Respondent and Appellee.**

**No. 15964.**

Supreme Court of South Dakota.

Argued April 27, 1988.

Decided July 27, 1988.

Richard Braithwaite, Sioux Falls, for petitioner and appellant.

Mark Smith, Asst. Atty. Gen., Pierre, for respondent and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice.

Petitioner, David Waff, appeals the trial court's denial of his petition for habeas corpus relief. We affirm.

Petitioner was convicted of first-degree murder and conspiracy to commit murder in the first degree. His case was affirmed on direct appeal. *State v. Waff*, 373 N.W. 2d 18 (S.D.1985). A full account of the facts is contained therein and in *State v. Wiegers*, 373 N.W.2d 1 (S.D.1985). For purposes of this case, we note that petitioner was convicted for the shooting and stabbing death of Russell Keller on October 22, 1981. Petitioner did not offer a post-arrest alibi to police officers, nor did he file a written notice of alibi defense pursuant to SDCL 23A–9–1. At trial, however, petitioner stated that he was with a certain William Ferguson at the time of the killing.

Petitioner's claim on this appeal is that he was denied effective assistance of counsel. Principally, petitioner contends that his attorney should have objected to the prosecutor's questions and comments regarding petitioner's inability to find Ferguson and petitioner's failure to mention his alibi defense prior to trial. Petitioner

claims the questions and comments were directed at his silence and, therefore, were impermissible.

At trial, defense counsel's direct examination of petitioner was aimed primarily at establishing petitioner's alibi defense, including petitioner's attempt and failure to locate Ferguson.[1] Petitioner stated he did not know the whereabouts of Ferguson. He further stated that he last spoke to Ferguson in 1982 and that Ferguson moved to Alabama in January, 1983.

As part of a wide-ranging cross-examination, the prosecutor again questioned de-fendant as to Ferguson's whereabouts and elicited the same responses.[2] The prosecutor further pursued defendant's inability to locate Ferguson and his failure to produce him at trial. During the course of this line of questioning, the prosecutor asked petitioner why he had not disclosed his alibi defense before the trial.

The closing arguments made by defense counsel and the prosecutor also addressed the whereabouts of Ferguson. In his closing argument, defense counsel noted his inability to locate Ferguson and produce him at trial. The prosecutor responded in

1. The following colloquy occurred between defense counsel and petitioner:

Q: Where is this—where is William Ferguson now?
A: I have no idea.
Q: And why don't you have any idea?
A: He went home to where his parents were living at that time in Alabama. I talked to him a few times in '82, and I haven't talked to him since then. I don't even think he's aware of what has happened to me.
Trial Tr. at 832-33.

2. On cross-examination, the prosecutor followed up on the question of Ferguson's whereabouts as follows:

Q: William Ferguson, where did you meet him at?
A: I was originally introduced to William through David Thompson.
Q: Where was he from?
A: From this area. Well, from the Rapid City area, excuse me. Somewhere out—his parents live in Rapid Valley. They ran a catering service, Black Hills Catering.
Q: That's not what you said Friday, is it?
A: I believe that's what I said.
Q: You said that his parents lived in Alabama and he went back to Alabama and that's the last you heard of him.
A: They had moved from—sometime in January or February of 1982, and they moved to Ethelsville, Alabama. They had sold their business, to whom I do not know.
Q: And that was the last you heard of him, huh?
A: No, I heard from Ferg sometime in the middle of 1982 and that was the last I heard of him. He called me.
Q: How come you didn't stay in touch with him like you did your other Air Force buddies?
A: I did. He didn't stay in touch with me. He moved.
Q: *How come you never told the authorities about this William Ferguson prior to the time you testified?* (Emphasis supplied).

A: I never told—no one ever asked me, for one.
Q: No one ever asked you?
A: The first time that I heard anything about this was after I was arrested.
Q: No—all right, let's—I'll give you the benefit of the doubt. Now, you had sometime prior to coming to trial here this phone record, didn't you?
A: Yes, I did.
Q: We furnished that to you, didn't we?
A: You did.
Q: And you testified it was on the basis of these phone calls that you could recall what you were doing the night of October 22nd.
A: That's correct.
Q: Okay, well, when you came up with that recollection how come you never told the authorities then that William Ferguson was your alibi?
MR. HUBBARD: Excuse me, Your Honor, could counsel approach the bench, please.
THE COURT: Uh huh.
(Off record discussion)
MR. HUBBARD: Your Honor, if I might have an objection concerning the search for Mr. Ferguson for the reasons I've stated.
THE COURT: You can have a standing objection.
MR. HUBBARD: Thank You.
Q: (By Mr. Tellinghuisen) Mr. Waff, you know for a fact by your own experience that law enforcement authorities have the ability to track people down if given enough time, don't you?
A: Yes, they can.
Q: We found you.
A: Obviously. And I wasn't hiding either.
Q: Well, is William Ferguson hiding?
A: No. I was not—I had no idea—
Q: But you don't deny that the first time the State ever heard the name of William Ferguson was when you were sitting in the stand there Friday.
A: That's correct, and until I received that phone bill—
Trial Tr. at 884-86.

his rebuttal summation that an adverse inference should be drawn from petitioner's failure to produce Ferguson.[3] In addition, the prosecutor stated that if the State had been informed of petitioner's alibi, it could have used its vast resources to locate Ferguson.

In support of his contention that the prosecutor's questions and comments were impermissible and should have been objected to by defense counsel, petitioner cites *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Petitioner's reliance on *Griffin*, however, is misplaced.

In *Griffin*, the Supreme Court held that comment by the prosecutor on a defendant's refusal to testify violated the defendant's Fifth Amendment right against self-incrimination. *Griffin*, 380 U.S. at 614–15, 85 S.Ct. at 1232–33, 14 L.Ed.2d at 110. This court has also held that prosecutorial comment on a defendant's failure to testify constitutes reversible error. *State v. Wilson*, 297 N.W.2d 477, 482 (S.D.1980); *State v. Winckler*, 260 N.W.2d 356, 369 (S.D. 1977); *State v. Strickland*, 87 S.D. 522, 529, 211 N.W.2d 575, 580 (1973); *State v. Brown*, 81 S.D. 195, 198, 132 N.W.2d 840, 842 (1965). Because petitioner voluntarily testified on his own behalf at trial, we find his reliance on *Griffin* inappropriate.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court extended the privilege against self-incrimination to situations where the prosecution uses a defendant's silence at the time of arrest to impeach a defense subsequently offered at trial. In *Doyle*, the defendants at trial testified to alibi defenses they had not previously told to the police or the prosecutor. The prosecutor then cross-examined the defendants about their failure to give their exculpatory version of the facts to the police at the time of their arrest. The Supreme Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98.

Despite the factual similarities between *Doyle* and the present case, we find the above rule inapplicable. The Supreme Court in *Doyle* dealt with impeachment by silence *at the arrest, just after Miranda warnings were given, and while the arrestees were still in police custody.* The Court refused to consider the question of whether the prosecutor's references to the defendants' failure to disclose their alibi defenses at any time prior to trial were unconstitutional.

Moreover, we have examined with care the prosecutor's questions and comments of which petitioner complains and we believe that petitioner's contentions are unfounded. The challenged questions and comments, when examined in context, were directed at neither petitioner's failure to testify nor his pre-trial silence. Rather, the prosecutor's remarks were directed at petitioner's failure to produce Ferguson as an alibi witness.

---

**3.** In his closing argument, the prosecutor made the following comments:

This matter of William Ferguson. Mr. Hubbard stood up here and said, "Take it from me, I've looked for William Ferguson." And I don't doubt that at all, I'm sure he did. But he also knows and he admitted to you and he told you that the State has vast resources at its disposal. We have the F.B.I., we have the D.C.I., we have the cooperation of every other law enforcement agency in the United States, *but I'm going to tell you right now, ladies and gentlemen, we were never asked to help find William Ferguson.* And I'm also going to tell you we offered. *But not once prior to the time that that defendant sat up there and spit out this name of William Ferguson were we ever given the name,* and not once were we ever asked to come in and assist in an effort to maybe prove or find somebody that could vouch for the defendant. *Now, that strikes me as being unusual.* (Emphasis supplied).

And I think it's important to put this whole thing into perspective. Because what we're here to do, ladies and gentlemen, is get at the truth. This isn't a game. It's not a chess match. If William Ferguson could sit up there and vouch for the defendant's whereabouts on the night of October 22, 1981, I would be the first one to call him. That never happened. We were never even given the opportunity.

Trial Tr. at 1006–07.

Comment on the failure of the accused to produce evidence in his defense is different from comment on his failure to testify. The prosecution may comment upon the failure of the accused to produce evidence in his defense when it appears to have been in his power to do so. *State v. Parker*, 263 N.W.2d 679, 683 (S.D. 1978); *Winckler*, 260 N.W.2d at 369; *State v. Knapp*, 33 S.D. 177, 182, 144 N.W. 921–22 (1914).

In assessing petitioner's argument, we must remember that it was petitioner himself, while testifying in his own behalf, who first mentioned Ferguson as his alibi defense as well as his inability to locate him. Once petitioner's alibi was solicited on direct examination, it was permissible for the prosecutor, upon cross-examination, to attack the credibility of the alibi by further eliciting testimony regarding Ferguson's existence and whereabouts and by calling attention to petitioner's failure to produce this critical defense witness. We cannot say that the cross-examination was improper because of the mere reference made to petitioner's failure to disclose his alibi before trial. When viewed in context, it is clear that the cross-examination focused on petitioner's failure to produce Ferguson as a witness.

Similarly, the prosecutor's rebuttal comments were not improper since they too were comments on petitioner's failure to produce Ferguson. Defense counsel, in his closing arguments, stated that he attempted to locate Ferguson but was unable to produce him at trial. The prosecutor's remarks in his rebuttal summation were merely a fair response to the assertions made by defense counsel. A reasonable, intelligent jury would not have understood the comments to mean anything else.

We conclude that the prosecutor's cross-examination questions and comments in his closing argument were directed not at petitioner's refusal to testify or his pre-trial silence, but at his failure to produce evidence. Consequently, such questions and comments were not improper and defense counsel did not act unreasonably by failing to object to them at trial.

Assertions of ineffective assistance of counsel require the application of the two-prong test promulgated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and adopted by this court in *Luna v. Solem*, 411 N.W.2d 656 (S.D.1987). In order to succeed on an ineffective assistance of counsel claim, the defendant must satisfy both prongs of the *Strickland* test by proving that counsel's performance was incompetent and that the defendant was prejudiced by the resulting errors. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 323 (1986); *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068, 80 L.Ed.2d at 693–94, 697. *See also Conaty v. Solem*, 422 N.W.2d 102 (S.D.1988); *Luna, supra; Woods v. Solem*, 405 N.W.2d 59 (S.D.1987).

Although we have already concluded that petitioner fails to satisfy the first prong of the *Strickland* test, we nonetheless address the test's second component. Under the *Strickland* test, the defendant must prove that he was prejudiced by his attorney's performance. *Kimmelman*, 477 U.S. at 381–387, 106 S.Ct. at 2587, 2590, 91 L.Ed.2d at 323, 327; *Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065, 80 L.Ed.2d at 698. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Conaty*, 422 N.W.2d at 104; *Luna*, 411 N.W.2d at 658; *Woods*, 405 N.W.2d at 61.

■ Petitioner fails to show us a reasonable probability that the outcome would have been different had counsel objected and asked that the prosecutor's comments be stricken. Instead, there is overwhelming evidence of guilt. The pistol that killed Keller belonged to petitioner. The phone call to Keller came from petitioner's phone. Co-conspirators testified against petitioner. Even if petitioner had shown defense counsel's performance was deficient by reason

of his failure to object, we would be hard pressed to conclude that "counsel's errors were so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable." *Strickland* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Conaty*, 422 N.W.2d at 103; *Luna*, 411 N.W.2d at 658; *Woods*, 405 N.W.2d at 61.

Petitioner also claims his trial counsel was deficient in failing to object to certain jury instructions and that he should have objected to certain testimony of co-conspirators. We have reviewed these arguments and find them to be without merit.

Judgment affirmed.

All the Justices concur.