Steven V. ALIBERTI, Petitioner
and Appellant,

v.

Herman SOLEM, acting in his capacity
as the duly-appointed Warden of the
South Dakota State Penitentiary, Re-
spondent and Appellee.

No. 16017.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1988.

Decided Aug. 31, 1988.

Scott D. McGregor, Rapid City, for peti-
tioner and appellant.

Clair B. Ledbetter, Asst. Atty. Gen.,
Pierre, for respondent and appellee; Roger
A. Tellinghuisen, Atty. Gen., Pierre, on the
brief.

WUEST, Chief Justice.

Petitioner, Steven V. Aliberti, appeals the trial court's order denying habeas corpus relief. We affirm.

On November 15, 1985, petitioner was convicted of aggravated assault pursuant to SDCL 22–18–1.1(3). He was subsequently sentenced to serve ten years imprisonment with three years conditionally suspended. We affirmed petitioner's conviction on direct appeal in *State v. Aliberti*, 401 N.W.2d 729 (S.D.1987).

Petitioner's conviction for aggravated assault stems from a quarrel involving petitioner and several family members. The altercation commenced when petitioner came home after a day of chopping wood and drinking. During the incident, petitioner physically attacked his sister who, acting in self-defense, struck him on the head with a length of pipe. Petitioner then threatened to burn down the building in which the family lived. Petitioner's sister summoned the police after petitioner cut off the power and lights to the building. Upon the arrival of the police, petitioner started to walk away from the scene. An officer followed him and told petitioner that he wanted to talk with him. Petitioner swung around and struck the officer in the head with his fist. *Aliberti*, 401 N.W.2d at 729.

Petitioner was advised of his constitutional right to trial by jury at his arraignment. Prior to the start of the scheduled jury trial, however, petitioner waived his right to trial by jury and requested that the case be tried to the court. This court held that petitioner "waived his right to a jury trial voluntarily, knowingly, intelligently, and with full knowledge of the relevant circumstances and likely consequences." *Aliberti*, 401 N.W.2d at 731.

On this habeas corpus appeal, petitioner claims he was denied effective assistance of counsel. Specifically, petitioner contends that his attorney should not have advised him to waive his right to trial by jury. Petitioner also claims that his intoxication and the blow to his head prevented him from forming the specific intent required for the crime of aggravated assault. Although defense counsel based petitioner's defense on this theory of "diminished capacity," petitioner asserts that the diminished capacity defense was inadequately prepared and presented.

Adjudicating petitioner's claims of ineffective assistance of counsel requires that we first address the standard of review for the disposition of a petition for habeas corpus relief. This court has never expressly set forth the standard by which we review a lower court's ruling in a habeas corpus proceeding.[1]

Although we have not explicitly delineated the standard of review for findings of fact and conclusions of law arising out of habeas corpus proceedings, we are mindful of the fact that we have set forth our *scope of review* regarding such proceedings. This court has often stated that in habeas corpus proceedings, the scope of review is limited because the remedy sought is in the nature of a collateral attack upon a final judgment. *Satter v. Solem*, 422 N.W.2d 425, 427 (S.D.1988); *Everitt v. Solem*, 412 N.W.2d 119, 120–21 (S.D.1987); *Podoll v. Solem*, 408 N.W.2d 759, 760 (S.D.1987); *Goodroad v. Solem*, 406 N.W.2d 141, 142 (S.D.1987); *Loop v. Solem*, 398 N.W.2d 140, 143 (S.D.1986); *Application of Williams*, 86 S.D. 208, 210, 193 N.W.2d 793, 794 (1972); *Application of Kiser*, 83 S.D. 272, 283, 158 N.W.2d 596, 602 (1968); *State ex rel Burns v. Erickson*, 80 S.D. 639, 645, 129 N.W.2d 712, 715 (1964); *State*

---

1. We note that this court recently addressed the standard of review for administrative findings of fact and conclusions of law.

... When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. *Matter of Change of Bed Category of Tieszen*, 343 N.W.2d 97 (S.D.1984); *Nash Finch Co. v. South Dakota Dept. of Rev.*, 312 N.W.2d 470 (S.D.1981). When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous. *Matter of S.D. Water Mgmt. Bd.*, 351 N.W.2d 119 (S.D.1984); *State, Div. of Human Rights v. Miller*, 349 N.W.2d 42 (S.D.1984).

*Permann v. Dept. of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113, 116 (S.D.1987) (*citing S.D. Wildlife Federation v. Water Mgt. Bd.*, 382 N.W.2d 26, 32 (S.D.1986) (Wuest, J., dissenting); *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130, 132 (S.D.1984)).

*ex rel Anderson v. Jameson,* 51 S.D. 540, 545, 215 N.W. 697, 699 (1927). "[H]abeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights." *Satter,* 422 N.W.2d at 427; *Goodroad,* 406 N.W.2d at 144; *State ex rel Burns,* 80 S.D. at 645, 129 N.W.2d at 715.

In determining the *standard* of review for habeas corpus proceedings, we look to the federal courts for guidance. Federal courts that have been asked to review a state or federal district court's factual findings in a habeas corpus proceeding afford considerable deference to the lower court's findings on basic, primary facts. Such findings of fact will not be set aside unless they are clearly erroneous. *See Blackburn v. Foltz,* 828 F.2d 1177, 1181 (6th Cir.1987); *Carter v. Rafferty,* 826 F.2d 1299, 1304 (3rd Cir.1987); *Butcher v. Marquez,* 758 F.2d 373, 376 (9th Cir.1985); *Meeks v. Bergen,* 749 F.2d 322, 327 (6th Cir.1984); *United States v. Auerbach,* 745 F.2d 1157, 1161 (8th Cir.1984); *Hayes v. Maggio,* 699 F.2d 198, 201 (5th Cir.1983).

Although the lower court's findings of fact are presumed to be correct, this presumption of correctness does not extend to the conclusions drawn from the application of legal principles to those factual findings. Applying legal principles to findings of fact creates mixed questions of law and fact. Federal courts will review mixed questions of law and fact de novo, giving deference to factual findings but reserving the right to give different legal weight to the facts. *See Blackburn,* 828 F.2d at 1181; *Carter,* 826 F.2d at 1304; *Martin v. Kemp,* 760 F.2d 1244, 1247 (11th Cir.1985); *Butcher,* 758 F.2d at 376; *Armstead v. Maggio,* 720 F.2d 894, 896 (5th Cir.1983); *Adams v. Jago,* 703 F.2d 978, 980 (6th Cir.1983).

■■■■ We are persuaded that this same standard of review applied by the federal courts should also apply in this court's review of a circuit court's habeas ruling, particularly when that ruling involves claims based on ineffective assistance of counsel. Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

■■■■ It is well settled that for a defendant to prevail on a claim of ineffective assistance of counsel, he must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See also Waff v. Solem,* 427 N.W. 2d 118 (S.D.1988); *Conaty v. Solem,* 422 N.W.2d 102 (S.D.1988); *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987). The defendant meets the requirements of the *Strickland* test by proving that his attorney's performance was incompetent and that, as a result, the defendant was prejudiced. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 323 (1986); *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068, 80 L.Ed.2d at 693–94, 697; *Waff,* 427 N.W.2d at 121. *See also Conaty, supra; Luna, supra.*

With respect to the performance component of the *Strickland* test, the defendant must show more than that the trial strategy of the defense counsel backfired or that another attorney would have prepared and tried the case in a different manner. The defendant must overcome the strong presumption that counsel was competent. *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586, 91 L.Ed.2d at 323; *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694; *Waff,* 427 N.W.2d at 121. Because of the difficulties inherent in [evaluating counsel's conduct from his perspective at the time], a court must indulge a strong presumption that coun-

sel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694 (citation omitted).

When reviewing counsel's performance, this court will not make a competency determination on the basis of hindsight. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Conaty*, 422 N.W.2d at 103 (*quoting, Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). The function of this court is not to assume the role of a Monday morning quarterback. We will not "second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney." *Conaty*, 422 N.W.2d at 103, *Woods v. Solem*, 405 N.W.2d 59, 62 (S.D. 1987); *State v. Dornbusch*, 384 N.W.2d 682, 686–87 (S.D.1986). Instead, this court in deciding an ineffectiveness of counsel claim will evaluate the reasonableness of counsel's representation "from counsel's perspective at the time of the alleged error and in light of all circumstances." *Waff*, 427 N.W.2d at 121 (*quoting Kimmelman*, 477 U.S. at 381, 106 S.Ct. at 2586, 91 L.Ed. 2d at 323); *Luna*, 411 N.W.2d at 658 (*quoting Kimmelman, supra*). The ultimate test of whether trial counsel was ineffective is whether under the entire record and totality of the circumstances, counsel's performance was within the range of normal competency. *See Kimmelman*, 477 U.S. at 381, 106 S.Ct. at 2587, 2589, 91 L.Ed.2d at 323; *Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694; *Waff*, 427 N.W.2d at 121.

In light of the foregoing principles, we find that defense counsel was not deficient in advising petitioner to waive his right to trial by jury. At the habeas corpus hearing, defense counsel stated his reasons for discussing with petitioner the possibility of waiving the jury trial.

... [W]e went through the pros and cons of a jury trial as opposed to a court trial; and as I recall it, I'd been thinking about recommending a possible waiver of jury trial for a matter of days, I suppose probably a week. The problem in this whole deal was that Steve's mother and his sister were going to show up to testify against him it appeared to me.... But Steve's mother was a—first of all, she identified herself to me as a recovering alcoholic. She was a rather frail woman. She was also the type of woman who I felt would be able to without making conscientious effort to do so invoke sympathy for herself on the part of potential jurors—potentially on the part of jurors; and I could see a backlash, a possibility of a backlash against Steve for in so many words putting his mother through something like that; and it occurred to me that I could—there was even a possibility of a backlash on the part of a sentencing judge.

Hearing Tr. at 29–30.

It is clear that defense counsel decided it would be tactically better for petitioner to waive his right to a jury trial. Petitioner was free to accept or reject defense counsel's advice. He chose to waive his right to trial by jury and did so voluntarily and with full knowledge of the relevant circumstances and likely consequences. Therefore, his argument on this point is rejected.

At trial, petitioner presented evidence of a diminished capacity to commit the crime with which he was charged. The defense of diminished capacity is generally recognized in South Dakota. *See* SDCL 22–5–5; *State v. Huber*, 356 N.W.2d 468 (S.D.1984); *State v. Primeaux*, 328 N.W.2d 256 (S.D.1982); *State v. Kills Small*, 269 N.W.2d 771 (S.D.1978). In support of this defense, petitioner relied upon the testimony of Dr. James V. Yackley, a general practitioner in Rapid City, South Dakota. Petitioner claims ineffective assistance of counsel because his trial lawyer did not

present any motions for a psychological evaluation prior to the trial. The factual findings of the circuit court, however, state:

### VI.

There is no evidence to suggest that a psychological examination would have produced any useful information for the trier of fact in Applicant/Petitioner's case.

\*   \*   \*   \*   \*   \*

### X.

That Mr. Aliberti does not challenge any of trial counsel's conduct in the actual trial of this case other than in his presentation of a defense of diminished capacity.

### XI.

That Mr. Dean called a general medical practitioner at the trial in this matter to testify about Applicant/Petitioner's head injury and his state of mind at the time of the offense.

### XII.

That Applicant/Petitioner's own expert witness, Frank Bettmann, a practicing attorney in Rapid City, South Dakota, testified that the defense of diminished capacity is extremely difficult to prove to a trier of fact.

We do not believe these findings are clearly erroneous. Although we may substitute our judgment for that of the circuit court in determining whether defense counsel's representation was ineffective, we see no reason to do so here. Petitioner has failed to show us that defense counsel's conduct was unreasonable and, therefore, has not met the required burden of proof.

Assuming defense counsel's tactics were deficient, we do not believe they can be considered prejudicial under the second prong of the *Strickland* test. The prejudice component of the *Strickland* test requires the defendant to affirmatively prove that he was prejudiced as a result of counsel's incompetent performance. *Kimmel-*

*man,* 477 U.S. at 381, 387, 106 S.Ct. at 2587, 2590, 91 L.Ed.2d at 323, 327; *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Waff,* 427 N.W.2d at 121; *Conaty,* 422 N.W.2d at 103. It is not sufficient for the defendant to show that counsel's performance, even if professionally unreasonable, had some conceivable effect on the outcome of the proceeding. *Conaty,* 422 N.W.2d 103–04 (*citing Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696). To determine prejudice, the appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Waff,* 427 N.W.2d at 121; *Conaty,* 422 N.W.2d at 104; *Luna,* 411 N.W.2d at 658; *Woods,* 405 N.W.2d at 61. We see no reasonable probability that the outcome would have been different.

JUDGMENT AFFIRMED.

MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

SABERS, J., dissents.

HENDERSON, Justice (concurring in result).

As I believe that the scope and standard of review is not only difficult to understand but hazy in discourse, I concur in result. Certainly, I agree with the clearly erroneous rule on findings of fact. However, the opinion, as regards conclusions of law, or mixed questions of law, finds me groping for some type of theoretical certainty. If, in effect, we are adopting the *Permann* rule (*Permann v. Department of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113 (S.D.1987), we should so state.

SABERS, Justice (dissenting).

I dissent.

Aliberti testified that he had only one discussion with his counsel about the possibility of his waiving a jury trial and that discussion occurred on the morning of trial. Aliberti's trial counsel testified that he first

discussed the possibility of waiving the jury trial on the day before the trial. The state's attorney was not informed until the afternoon before trial. The trial court was advised on the morning of Aliberti's scheduled jury trial, when Aliberti, upon recommendation of his trial counsel, waived his right to a jury trial.

The State claims that Aliberti knowingly, intelligently, and voluntarily waived his right to a jury trial. How can it be said that there was a knowing, intelligent, and voluntary waiver of this right when Aliberti's counsel only provided him with half the information necessary to make such a waiver? Aliberti was never advised by his attorney on the full picture—the pros and *the cons* of waiving this constitutional right. His consent was a product of loss of hope, created by counsel. It certainly was not intelligent. It was foolish, even stupid. By encouraging, recommending (even coercing) Aliberti to waive his right to a jury, counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Aliberti's trial counsel failed to meet his responsibility to consult in a meaningful manner with Aliberti on this important decision. *Strickland, supra.* A fair reading of this record reveals that counsel's representation with respect to the question of jury trial waiver was so ineffective and casual that it evidences a manifest usurpation of Aliberti's constitutional rights. *State v. Anderson,* 387 N.W.2d 544 (S.D. 1986); *State v. Phipps,* 318 N.W.2d 128 (S.D.1982).

The prejudice suffered by Aliberti begins with the trial of his case to the court alone rather than to a jury composed of twelve of Aliberti's peers. Factual determinations were left to a single mind rather than twelve. This was extremely damaging to Aliberti's case because of the factual defense of diminished capacity chosen by Aliberti's trial counsel. The goal in a diminished capacity defense is to raise sufficient doubt in the mind of the jury as fact finder as to the prosecution's proof of intent. *See State v. Bittner,* 359 N.W.2d 121 (S.D. 1984); *State v. Kills Small,* 269 N.W.2d 771 (S.D.1978).

What was gained by giving up the right to a jury trial in this case? Nothing! Absolutely nothing! It would have been far, far wiser to obtain almost any minor concession in a plea bargain. The record indicates that Aliberti's trial counsel scared Aliberti away from a jury trial. This was done on the basis that the presence and testimony of Aliberti's mother and sister would unduly harm him before a jury but not before a judge. This is pure fiction and constitutes sufficient prejudice to Aliberti's case for a claim of ineffective assistance of counsel.

In addition, there was expert testimony that Aliberti's trial counsel failed to conform his representation of Aliberti to the customary standards of skill and diligence of a reasonably competent defense lawyer practicing in Rapid City in his recommendation to Aliberti that he waive trial by jury. The expert stated: "[I]f there is going to be any doubt in a State's case, ... the chances of creating that doubt or establishing that doubt are greater with a body of twelve people."

I would reverse and remand for a new trial.